533 A.2d 922

Hugh H. LOWERY, et ux.

v.

Waller S. HAIRSTON, Personal Representative of the Estate of Henry E. Harris.

No. 191, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Dec. 2, 1987.

Donald H. Olson (Charles E. Wheeler and Miller, Wheeler, Thompson & Thompson on the brief), Easton, for appellants.

Waller S. Hairston (William H. Price and Henry, Hairston & Price on the brief), Easton, for appellee.

Argued Before GILBERT, C.J., and ALPERT, and BELL (ROSALYN B.), JJ.

GILBERT, Chief Judge.

The Circuit Court for Talbot County dismissed Hugh H. and Beatrice R. Lowery's specific performance suit against Waller S. Hairston, Esquire, Personal Representative of the Estate of Henry Harris, on the ground that the matter was barred by the six month statute of limitations applicable to the filing of claims against an estate.

Feeling aggrieved by that decision, the Lowerys have appealed to this Court where they pose two issues:

1) Did the circuit court err in determining that the Lowerys' option to acquire real property was a "claim" against an estate within the meaning of Md. Est. & Trusts Code Ann. § 8–103(a) and, therefore, barred by the statute of limitations?

2) If the trial court so erred, are the Lowerys entitled to specific performance?

Although we agree with the circuit court that the exercise of the option to acquire real property is a claim against an estate, subject to the time limitations imposed by Md. Est. & Trusts Code Ann. § 8–103(a), we reverse that court's judgment that the claim was untimely. We do not, however, decide whether the Lowerys are entitled to specific performance because the circuit court never reached the issue of the validity and enforceability of the option agreement. Since that question was not decided by the circuit court, it is not properly before us. Md. Rule 1085.

The facts have been stipulated by the parties and are summarized below in chronological order.

The Lowerys in December 1980 entered into a contract of sale whereby they agreed to purchase and the decedent Harris agreed to sell a parcel of land containing 15 acres with frontage on Eastern Bay in Talbot County. Additionally, in connection with the execution of that contract of sale, Harris agreed to grant the Lowerys an option to purchase a contiguous parcel of land, consisting of "approximately 8 acres, more or less" for $3,000 per acre. Purchase was to be "from . . . [Harris's] estate or sooner if property becomes available." A deed conveying the 15 acres was executed by Harris on February 9, 1981.

On the same day Harris and the Lowerys signed an Option Agreement, which provided:

*"THIS AGREEMENT* made this 9th day of February, 1981 by *HENRY E. HARRIS,* hereinafter called Optionor and *HUGH H. LOWERY* and *BEATRICE R. LOWERY,* Optionees.

In consideration of the purchase of even date by the Optionees of a part of the Optionor's property, as shown on a Plat entitled "PART OF THE LAND OF HENRY E. HARRIS" the Optionor does hereby grant unto the Optionees the exclusive right to purchase the property re-

served to him as shown on said plat, consisting of approximately 8 acres, on the following terms and conditions:

1. The option price is Three Thousand Dollars ($3,000.00) per acre as determined by future survey.

2. The option must be exercised within thirty (30) days after written notice to the Optionees from the Optionor or thirty (30) days after written notice to them by the Personal Representative of his estate that the Optionor has died.

3. The Optionees shall have thirty (30) days after their exercise of the option to make settlement for their purchase of said property on such terms as may be agreed upon with the Optionor or his Personal Representative. If there is no agreement between the parties, Optionees shall pay all costs of settlement subject to adjustments for taxes and payment by them of all expenses with respect to the transfer.

AS WITNESS the hands and selas [sic] of the parties hereto the day and year first above written."

The agreement was recorded among the land records of Talbot County on February 9, 1981.

Following Harris's death on July 16, 1984, Waller S. Hairston ("Hairston"), who on July 23, 1984, was appointed Personal Representative of the Harris estate, notified the Lowerys on July 25, 1984, of Harris's death. Fifteen days later, Hugh Lowery sent Hairston a written notice of his intent to exercise the option. The note stated, among other things, that "[a]fter a survey to determine the residue, I am willing and able to complete the sale of the remaining 5 acres + or −." On September 9, 1984, one day after the thirty day period allowed for settlement under the option agreement had lapsed, the Lowerys sent another note to Hairston inquiring as to when the estate expected to settle on the remaining parcel of land. Hairston failed to respond to either note, and there were no further contacts between the parties until December 21, 1984. At that time an attorney for the Lowerys telephoned Hairston and inquired about the status of the settlement. Hairston responded

that he was unwilling to settle inasmuch as the estate had not been presented with a survey plat within thirty days after the August 9, 1984, note from Lowery, nor had it received a prepared deed and settlement sheet. The day after Christmas, the Lowerys' attorney wrote Hairston:

"... [We] are ready, willing, and able to perform ... [our] part of the agreement but you advise that you, as personal representative, are unwilling to perform. I will appreciate confirmation of your position in writing so that we can began [sic] appropriate legal action, if necessary."

Hairston replied the next day, by letter, reading in pertinent part: "At the time of your telephone call, the time to exercise the option and hold settlement had long expired without any agreement on the part of the estate to extend the time for settlement." Hairston's letter concluded by observing:

"What I said was that I had *reservations* about settlement at this time, but as of this date settlement documents have never been tendered to me as personal representative of the Estate of Henry E. Harris for approval or rejection. In the absence of their presentation to me, I have to assume that such settlement documents do not exist even as of this date and time. The responsibility for presentation of settlement documents during the period of time required by the option agreement rests upon the optionee, Mr. Lowery, not upon the Estate of Henry E. Harris." (Emphasis added.)

The Lowerys' attorney answered that the Lowerys were ready to settle for the property that was the subject of the option and were willing to bear all costs of settlement, including the survey. The Lowerys, through counsel, restated to Hairston the basis of their claim to the optioned land and explained that they had assumed that the survey would be arranged by the person in possession of the property (Hairston), and that this further assumed that the settlement would be based on the result of the survey.

The stipulated facts indicate that sometime in late January or early February 1985 the Lowerys, with Hairston's

permission, ordered that a survey be made of the optioned land. When the survey plat was issued, in early April 1985, the Lowerys, through their attorney, advised Hairston of the results of the survey, calculated the sales price to be $29,190, offered to prepare the deed, and indicated the funds could be obtained on three days notice of a settlement date. Hairston refused to settle, and the Lowerys on May 9, 1985, brought this action for specific performance.

The Lowerys advance two alternative reasons why they believe the trial court erred in dismissing their claim:

"A) The claim requirement of Section 8–103(a) does not apply to a suit for specific performance of a real estate contract.

B) Even if the claim requirement of Section 8–103(a) were applicable here, a timely claim was presented to Hairston and this suit is not barred."

## I.

### A Claim Under § 8–103 of the Estates and Trusts Article

The Lowerys contend that, upon the death of Harris, they did not have a "claim" against the estate but owned a property interest and a contract right. They assert that when they allegedly exercised the option, on August 9, 1984, their status changed from optionee to contract purchaser. They argue that, by exercising the option, they presented the personal representative with an obligation to perform a contract for the sale of real estate rather than a "claim" against the estate. That argument is both novel and unavailing.

The gist of the Lowerys' argument is that an interest in real property is not subject to Md. Est. & Trusts Code Ann. § 8–103(a) because Title 8 of the Estate Article applies only to monetary claims concerning matters in existence at the time of death of the decedent. Title 7, on the other hand, the Lowerys assert, addresses the administration of the whole estate. That title provides, in § 7–401, the general

powers under which the personal representative may perform his duties, including, but *not limited* to, the payments of claims brought under Title 8. One of the powers enumerated in § 7–401 is:

"... [The personal representative] may perform the contracts of the decedent that continue as obligations of the estate, and execute and deliver deeds and other documents under circumstances as the contract may provide."

The Lowerys maintain that their exercise of the option to buy the 8 acres of land from Harris's estate is governed by the provisions of Title 7 "without a limitation imposed by any other part of the Estates and Trusts Article."

What the Lowerys are endeavoring to do is to circumvent the statutory limitations period for the filing of claims against an estate. Their attempt fails because the line they try to draw between real and personal property was erased by the General Assembly's 1969 revision of the testamentary law. *Campbell v. Welsh,* 54 Md.App. 614, 628, 460 A.2d 76, 84 (1983).

■ Title 1, § 1–301 of the Estates and Trusts Article describes the property that is now subject to the Article: [1]

"*All property of a decedent shall be subject to the estates of decedents law,* and upon his death shall pass directly to the personal representative, who shall hold the legal title for administration and distribution, *without any distinction, preference, or priority as between real and personal property.*" (Emphasis added.)

Section 1–101(P) of the Estates Article provides that, as used throughout the statute, the term "property" includes "*both real and personal property,* and any *right* or *interest* therein" (emphasis added). That definition reflects a departure from what theretofore had been the traditional

---

1. Prior to the 1969 revision of the testamentary law of Maryland, *real* property passed directly to the heirs at law and did not pass through the administrator or executor of the estate.

definition of "probate estate." *See* Comment to Estates Article § 1–101. The optioned land in the case *sub judice* is the property of the estate within the meaning of Estates Article § 1–101 and is subject to the provisions of § 1–301.

Although Estates Article § 8–104(d) manifests that causes surviving the death of the decedent are not required to be filed as claims against the estate, the commencement of an action against the estate, nevertheless, must occur within the time prescribed in § 8–103.

The Lowerys' polemic that time limitations are not applicable to suits for specific performance is totally without legal foundation or support and was properly rejected by the trial court.

## II.

### *Limitations*

Estates Article § 8–103(a) provides:

"Except as otherwise expressly provided by statute with respect to claims of the United States and the state, *all claims against an estate of a decedent, whether due or to become due,* absolute or contingent, liquidated or unliquidated, *founded on contract,* tort, or other legal basis, *are forever barred against* the estate, *the personal representative,* and the heirs and legatees, *unless presented within six months after the first appointment of a personal representative.*" (Emphasis added.)

The Lowerys aver that their claim was presented in a timely manner. They asseverate that in accordance with Estates Article § 8–103(a) they properly filed a claim with the personal representative. They assert that either Mr. Lowery's note of August 9, 1984, or their attorney's letters of December 26, 1984, or January 7, 1985, satisfied the code requirement. They further contend that the personal representative did not furnish them a valid notice of disallowance of their claim prior to April 1985 when he refused to settle for the optioned property. We agree.

Speaking through Judge Liss in *Alban Tractor Co., Inc. v. Bollock*, 44 Md.App. 699, 701, 410 A.2d 1101, 1102 (1980), this Court stated:

"Md.Code (1974), Estates and Trusts Article, Section 8–104 provides three alternative methods by which creditors *may* present their claims against an estate. [1] Subsection (b) allows a claimant to deliver or mail to the personal representative a verified written statement indicating the basis of the claim, the name and address of the claimant and the amount claimed. [2] The claimant may also file a written statement of his claim, in the form prescribed by Subsection (c), with the Register of Wills and deliver or mail a copy of the claim to the personal representative. [3] Or [under subsection (d)] the claimant may commence an action against the estate provided the action is instituted within the time limit for the filing of claims." (Emphasis added.)

*See also Connelly v. Collier*, 39 Md.App. 421, 385 A.2d 826 (1978), *aff'd*, 285 Md. 123, 400 A.2d 1107 (1979); *Campbell v. Welsh*, 54 Md.App. at 630, 460 A.2d at 85. Regardless of which of the three methods is employed to present a claim against an estate, the time limitations of § 8–103 apply.

■ Hairston, as we have seen, was appointed as personal representative of Harris's estate on July 23, 1984. The time for presentment of a claim or commencement of a suit expired six months thereafter, *i.e.*, January 23, 1985. The Lowerys' missive dated August 9, 1984, as well as their attorney's letters of December 26, 1984, and January 7, 1985, substantially complied with the requirements of § 8–104(b) and provided the personal representative with timely notice of the nature of the claim.[2]

---

**2.** It should be noted that, although the Lowerys did not comply with all the provisions of § 8–104(b), the use of the word "may" throughout § 8–104 indicates the Legislature's intent that the forms of presentment be permissive and not mandatory in nature. Moreover, stated therein, § 8–104(b) expressly provides that "failure to comply with the provisions of this section ... *may* be a basis for disallowance of a claim in the discretion of the court." (Emphasis added.)

After Hairston refused in April 1985 to settle, the Lowerys sought relief from the court for the disallowance by Hairston of their claim.

The Estates and Trust Article provides a two-tiered set of limitations for claims presented in accordance with § 8–104(b) and (c). *Campbell v. Welsh*, 54 Md.App. at 629, 460 A.2d at 85. As we observed in *Campbell, id.*:

"Whereas the old law ... focused primarily on the time for filing an action after rejection of the claim by the executor/administrator, the new law imposes a specific time requirement both on the initial presentment of the claim to the personal representative and on seeking judicial review of his rejection of it. Section 8–103(a) sets forth the first requirement; section 8–107(b) prescribes the second."

Section 8–107 provides in pertinent part:

"(a) ... If a personal representative intends to disallow, in whole or in part, a claim that has been presented within the appropriate time and in the form prescribed in § 8–104(a) and (b) [§ 8–104(b) and (c)], he shall mail notice to each claimant stating:

(1) That the claim has been disallowed in whole or in a stated amount; or

(2) That the personal representative will petition the court to determine whether the claim should be allowed.

(b) ... If the claim is disallowed in whole or in a stated amount, the claimant is forever barred to the extent of the disallowance unless he files a petition for allowance in the court or commences an action against the personal representative or against one or more of the persons to whom property has been distributed. The action shall be commenced within 60 days after the mailing of notice by the personal representative. The notice shall warn the claimant concerning the time limitation."

■ The circuit court found that Hairston's letter of December 27, 1984, was a disallowance of the Lowerys'

claim under § 8–107. Accordingly, the court said that the Lowerys should have filed suit on or before February 24, 1985, or within sixty days after the mailing of Hairston's rejection of the claim. We disagree with the trial judge because we think the characterization of Hairston's letter as a disallowance is incorrect. The letter was too vague and indefinite to qualify as a rejection. Rather than answering the Lowerys' request for a confirmation of the estate's position regarding the option, Hairston stated that "what I said was that I had reservations about settlement at this time." His use of the phrase "reservations ... at this time" does not constitute the notice *required* by § 8–107(a)(1) that "the claim has been disallowed in whole or in a stated amount." The words "reservations about settlement at this time" do not clearly indicate a flat-out rejection. The quoted words, of course, may be read to mean that it is too late or that settlement may be had in the future. The Hairston letter is hardly a model of clarity, whatever else it might be. Since the time limitations prescribed by § 8–107(b) were not triggered by Hairston's letter of December 27, 1984, no valid notice of disallowance was issued by Hairston prior to April 1985. Consequently, the Lowerys' suit for specific performance, filed on May 9, 1985, was well within sixty days from the date of Hairston's rejection and thus complied with § 8–107.

We conclude that the Lowerys' claim was presented within the time limitations imposed by the Estates and Trusts Article. We, therefore, reverse the judgment of the circuit court and remand the case for determination of the validity *vel non* of the Lowerys' action for specific performance.

JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.