900 F.2d 250
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
R. Edwin BROWN, PA; Rex L. Sturm, PA, t/a Brown and Sturm,
A Partnership, Plaintiffs-Appellants,
v.
William B. MOORE, Personal Representative of the Estate of
William Parreco; William B. Moore, Individually,
Defendants-Appellees.
 No. 89-1481.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 8, 1990.
Decided: March 22, 1990.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., District Judge. (CA-88-1296-B)
 Francis Nash Inglehart, Sr., Inglehart & McLaughlin, Towson, Md., for appellants.
 Neil Joel Dilloff, Piper & Marbury, Baltimore, Md., for appellees.
 Jonathan D. Smith, M. Rosewin Sweeney, Piper & Marbury, Baltimore, Md., for appellees.
 D.Md.
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 Before K.K. HALL and CHAPMAN, Circuit Judges, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 CHAPMAN, Circuit Judge:
 
 
 1
 This appeal arises out of a civil suit brought by R. Edwin Brown ("Brown") and Rex L. Sturm (together, "Brown and Sturm") against William B. Moore ("Moore"), both individually and as personal representative of William Parreco ("Parreco"). Brown and Sturm alleged, inter alia, breach of contract for a commission in connection with the sale of real estate by Parreco, and sought compensatory damages of over $800,000 and punitive damages of $1,000,000. The district court granted summary judgment to Moore, and Brown and Sturm appeal. We review the district court's ruling de novo and we affirm in part, but we reverse and remand for a determination of whether there was substantial compliance with Maryland law as to the presentation of claims against a decedent's estate.
 
 
 2
 * This case concerns a real estate transaction in 1984 and the subsequent death of the seller of the real estate. In March 1984, Parreco, age 80, was referred to Brown, an attorney in the firm of Brown and Sturm, for legal advice regarding a sales contract offered to Parreco for the purchase of his 317 acre dairy farm near Germantown in Montgomery County, Maryland. Brown met with Parreco on March 7, 1984, and advised against acceptance of the contract. Brown told Parreco at this meeting that he would be charged for Brown's services on a quantum merit basis but did not explain what this meant. A few days later, Parreco asked Brown to be his agent in connection with the sale of the farm. Brown agreed and told Parreco he would charge an agent's commission, which was not specified at the time.
 
 
 3
 Over the following several months, Brown had discussions with several prospective purchasers, reviewed offers submitted for the farm, and provided other legal services. Brown did not advertise the property, believing that because the farm was in the path of development, it "would sell itself." Brown ultimately negotiated a sale to Great Seneca Investments by contract dated November 17, 1984. The purchaser was referred to Brown by the brokerage firm of Carey Winston. Brown admits he did not procure the purchaser.
 
 
 4
 Brown kept no record of the time spent on Parreco's matters and estimates that the time he spent up to the execution of the contract on November 20, 1984, was probably close to two hundred (200) hours. On November 17, 1984, Parreco signed a separate agreement describing Brown and Sturm's compensation. The agreement provided that Parreco would pay 8% of all moneys received from the real estate contract and that Brown and Sturm would "provide bookkeeping and legal advice as needed for the terms of ths [sic] agreement." Brown and Sturm received payments of $470,000 under the real estate contract from November 21, 1984, through September 30, 1987. They retained eight percent of these payments, or $37,600, and remitted the balance to Parreco or his estate. Brown and Sturm claim that they are due an additional $812,629 on the assumption that the buyer will purchase all of the property.
 
 
 5
 Parreco died on January 20, 1986. Defendant Moore qualified as Personal Representative of Parreco's estate on February 5, 1986. On February 12, 1986, Moore notified Brown of his appointment. On March 6, 1986, Brown mailed to Moore a copy of the contract with Great Seneca, a copy of the fee commission agreement, and an accounting of payments already made and commissions retained. Thereafter, Brown and Sturm sent the payments received from Great Seneca to Moore after deducting their eight percent commission. Thus, Brown and Sturm kept $30,400 in commissions during Parreco's lifetime and $7,200 in commissions from April 7, 1986, to September 30, 1987. Moore was fully aware of the commissions retained by Brown and Sturm.
 
 
 6
 Brown and Sturm did not file a formal claim against Parreco's estate within six months of Moore's appointment. On December 31, 1987, Moore wrote to Brown and Sturm, advising them that Moore, as personal representative of Parreco's estate, would pay no more than the reasonable value of the services rendered up to the date of Parreco's death. After receiving the letter, Brown and Sturm filed a formal claim against the estate with the Register of Wills on or around January 16, 1988. On February 1, 1988, the Register of Wills for Prince George's County notified Brown and Sturm that their claim was barred because it was not filed within six months after the appointment of the personal representative.
 
 
 7
 On May 4, 1988, Brown and Sturm filed suit in the United States District Court for the District of Maryland, basing their claims under the November 17, 1984, contract between Brown and Sturm and Parreco and claiming jurisdiction upon diversity of citizenship of the parties. The complaint included counts of interference with contract, fraud and vicarious liability. Brown and Sturm demanded compensatory damages of over $800,000 in past due and future commissions and $1,000,000 in punitive damages. Moore counterclaimed for breach of fiduciary duty, rescission of the contract, conversion and replevin. On March 31, 1989, the court granted Moore's motion for summary judgment and denied Brown and Sturm's motion for summary judgment. Brown and Sturm appeal.
 
 II
 
 8
 Brown and Sturm argue first that the district court erred in granting summary judgment to Moore on Counts I and V of Brown and Sturm's complaint by holding that they failed to satisfy the prerequisites of Sections 8-103(a) and 8-104(b) of the Maryland Estates and Trusts Code Annotated. Section 8-103(a) deals with the limitation on the presentation of claims and provides as follows:
 
 
 9
 [A]ll claims against the estate of a decedent, whether due or to become due, absolute or contingent, ... are forever barred against the estate [and] the personal representative ... unless presented within six months after the first appointment of the personal representative.
 
 
 10
 Md.Estates and Trusts Code Ann. Sec. 8-103(a) (1989). Section 8-104(b) gives one of the three different methods by which a claimant may present a claim:
 
 
 11
 The claimant may deliver a verified written statement of the claim indicating its basis, the name and address of the claimant, and the amount claimed. If the claim is not yet due, the date when it will become due shall be stated.... The failure of the claimant to comply with the provisions of this section ... may be a basis for disallowance of a claim in the discretion of the court.
 
 
 12
 Md.Estates and Trusts Code Ann. Sec. 8-104(b) (1974). The use of the term "may" indicates that the specific manner of presentment under Section 8-104(b) is "permissive and not mandatory in nature." Lowery v. Hairston, 73 Md.App. 189, 197, 533 A.2d 922, 927 n. 2 (1987). Thus, a claimant need only "substantially compl[y] with the requirements of Sec. 8-104(b) and provid[e] the personal representative with timely notice of the nature of the claim." Id., 73 Md.App. at 197, 533 A.2d at 927.
 
 
 13
 The district court held that Brown and Sturm were barred under Section 8-104(b) because Brown's March 6, 1986, letter to Moore "was not verified ... [nor gave any] indication that it included the amount claimed, the date when it would become due, or the nature of any contingencies." This holding is erroneous because Lowery clearly teaches that the failure to verify and to include certain information did not render Brown and Sturm's letter insufficient per se under Section 8-104(b), so long as substantial compliance was shown.
 
 
 14
 Brown and Sturm argue further that they substantially complied with Section 8-104(b) when they mailed the contracts of sale and of fee agreement to Moore on March 6, 1986, just over a month after Moore was appointed on February 5, 1986, and well within the six-month period. Brown and Sturm again cite Lowery, where the decedent had granted an option to the claimant to buy a certain tract of land. After the decedent died on July 16, 1984, a personal representative was appointed on July 23, 1984. Fifteen days later, the claimant sent the personal representative written notice of his intent to exercise the option, to which the personal representative failed to respond. The claimant again indicated its intent to exercise the option on December 26, 1984, and January 7, 1985, still before the expiry of the six-month limitation period. The court held that the claimant had substantially complied with the requirements of Section 8-104(b), even though, as Brown and Sturm point out, the claimant's notice neither was verified nor gave an amount. Since the facts here are analogous, Brown and Sturm argue that Lowery is controlling.
 
 
 15
 We cannot say whether Brown and Sturm substantially complied with Section 104(b). Because the record does not include a copy of the letter that Brown sent to Moore on March 6, 1986, although it does contain the contract of sale and fee agreement, we are unable to ascertain the adequacy of the notice. Moore argues that Brown and Sturm's failure to submit the letter to the district court and to proffer its contents precludes this court from considering the evidence on appeal, citing Whitlock v. Duke University, 829 F.2d 1340, 1343 (4th Cir.1987). We disagree for several reasons. First, it is uncertain from the parties' briefs and the record whether the letter was or was not submitted to the district court. Second, Whitlock involved quite a different situation. In that case, this Court declined to consider medical studies evidence that defendant Whitlock, the non-moving party, merely alluded to in his own deposition but did not submit to the district court. As a result, the Court had no reason to assume the existence of the studies or to determine their probative value. Here, however, Moore does not deny that he timely received the letter and accompanying documents, and Moore's subsequent acceptance (at least until his December 31, 1987, letter) of the benefits of the contract and fee agreement is evidence that he understood the nature of Brown and Sturm's claim. Viewing the evidence in a light most favorable to Brown and Sturm, we believe that these circumstances create genuine issues of material fact and do not entitle Moore to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1987); Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985). Therefore, we remand the case to the district court to determine whether Brown and Sturm substantially complied with Section 8-104(b).
 
 II
 
 16
 Brown and Sturm make a number of other claims that we find meritless. First, Brown and Sturm argue that the district court erred in finding that there was no basis for suing the personal representative for interference with contract. Under Maryland law, a third party who, without legal justification, intentionally interferes with the rights of a party to a contract, or induces a breach thereof, is liable in tort to the injured contracting party. Wilmington Trust Co. v. Clark, 289 Md. 313, 329, 424 A.2d 744, 754 (1981). It follows that recovery is not permitted where the defendant is a party to the contract, and Moore, as personal representative of Parreco's estate, is by operation of law a party to the contract. Id. Likewise, an agent of a contracting party cannot be held liable. Continental Cas. Co. v. Mirabile, 52 Md.App. 387, 402, 449 A.2d 1176, 1185, cert. denied, 294 Md. 652 (1982). Brown and Sturm imply that Moore was somehow acting out of self interest in not honoring the fee agreement, but they provide neither legal nor evidentiary support. As a result, Brown and Sturm's argument fails, and the district court properly dismissed Count II.
 
 
 17
 Second, Brown and Sturm assert that the district court erred in holding that they failed to show two elements of fraud under the test set out in Suburban Properties Management Inc. v. Johnson, 236 Md. 455, 460, 204 A.2d 326, 329 (1964): (1) that Moore made a false representation or omission; and (2) that Brown and Sturm could have reasonably relied on any representation or omission of Moore. The record reveals, however, that Brown and Sturm conceded that Moore never made a misrepresentation. Moreover, Moore had no duty to advise Brown and Sturm of their duty to comply with filing requirements. Jordan v. Morgan, 252 Md. 122, 249 A.2d 124, 128-30 (1969). Finally, Brown was an attorney experienced in probate law and could not have reasonably relied on Moore's silence to excuse a failure to make a timely claim. Consequently, the district court correctly dismissed Counts III and IV.
 
 III
 
 18
 For the above reasons, we affirm the district court's granting of summary judgment to Moore on Counts II, III and IV, and reverse and remand Counts I and V to the district court to determine whether Brown and Sturm substantially complied with Sec. 8-104(b).
 
 
 19
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED