In re the Estate of Gerald
M. EVANS, Deceased.

LAW OFFICE OF WILLIAM F. BRAT-
TAIN II, and Shulkin, Hutton & Buck-
nell, Inc., P.S., Appellants,

v.

Merwin E. ANDERSON, Personal Rep-
resentative of Estate of Gerald M.
Evans, Deceased, Appellee.

No. S–6264.

Supreme Court of Alaska.

Sept. 8, 1995.

William F. Brattain, Baker, Brattain &
Huguelet, Anchorage, for appellants.

Winston S. Burbank, Call, Barrett & Bur-
bank, Fairbanks, for appellee.

Before MOORE, C.J., and RABINOWITZ,
MATTHEWS, COMPTON and
EASTAUGH, JJ.

## OPINION

MOORE, Chief Justice.

### I. INTRODUCTION

Appellants (the lawyers) are the holders of a promissory note executed by Gerald Evans two years before his death. The lawyers filed a petition for payment against the Evans estate. The superior court held their claim time-barred under AS 13.16.475(a), and entered summary judgment in favor of the estate. We reverse.

### II. FACTS AND PROCEEDINGS

In 1981 Gerald Evans signed a promissory note in favor of the lawyers. The note represented Evans' share of the expense of legal work that the lawyers had performed on behalf of a partnership. Evans died, allegedly without satisfying the debt, and by a letter dated September 2, 1983, the lawyers filed a timely notice of a claim against the Evans estate (the estate).

Under Alaska's probate code, an estate can disallow a claim and initiate a sixty-day period in which the claimant must petition the superior court for allowance or have the claim become permanently time-barred. AS 13.16.475(a). The estate's representative "may mail a notice to any claimant stating that the claim has been disallowed." *Id.* The sixty-day statute of limitations against the claimant begins to run "if the notice warns the claimant of the impending bar." *Id.* Under the same provision of the probate code, the estate in this case had to determine the validity of all claims within sixty days of December 12, 1983. Any claim which was not disallowed by the end of that period would be deemed allowed as a matter of law. AS 13.16.475(a).[1]

On December 9, the lawyers inquired by letter of the estate's attorney, Richard Savell, about the status of their claim. Savell responded by letter (the Savell letter) on December 22. The Savell letter stated, in relevant part:

I am in receipt of your letter dated December 9, 1983 inquiring of the status of the Evans Estate. As I explained to you in our conversation of December 8, 1983, I will need more information in order to advise the personal representative in making a determination as to your claim.

. . . .

I have requested background documentation from you so that I can gain the fullest understanding of the case you handled [on behalf of Evans] and its settlement. I have requested to see the notes, security, if any, and complaint prepared by [the party that sued Evans and his partners]. I will also need all pleadings prepared by you, the final settlement agreement, correspondence between you and Jerry [Evans], and a record of attorney time devoted to Jerry's case. Finally, I should be advised of the total fees agreed to be paid by all parties, including the fees from [one of Evans' partners] on his affirmative recovery from the [plaintiff], and any and all fees arrangements made with Jerry before, after or during the case.

Lest we drop the ball and delay acting upon the claim while waiting for a response from you, it would be safer to disallow the claim pending receipt of the requested documentation. Of course, the personal representatives will reconsider any decision within the next sixty days if the requested material is provided. After sixty days the claim will be barred under AS 13.16.475.

I look forward to your cooperation in complying with my requests so that a satisfactory resolution of this claim can be reached.

It was not until May 1993 that the lawyers filed a petition for payment of their claim. The parties cross-moved for summary judgment. The estate argued that the Savell letter was a notice of disallowance. Since the lawyers had not filed their petition within sixty days after the letter was mailed, the

---

1. The statute provides:
 Failure of the [estate's] personal representative to mail a claimant a notice of action on a claim for sixty days after the time for original presen-
 
 tation of the claim has expired has the effect of a notice of allowance.
 AS 13.16.475.

estate concluded that the claim was time-barred under AS 13.16.475(a).

One of the lawyers, William Brattain, argues that he never understood the Savell letter to be a disallowance of the claim. He asserts that he sent Savell some of the documentation requested in the letter, and that Savell informed him during a telephone conversation that "there was little point in getting involved in a drawn out controversy," because the estate was insolvent due to tax liabilities. Brattain claims he then

> assumed, since [he] never received an unequivocal disallowance of the claim, that Mr. Savell concluded ... [that] there was no point in disallowing the claim since: (1) it was prima facie valid; (2) there was no money to pay it; (3) there was little likelihood that sufficient assets would ever come into the estate to pay it and, (4) finally, and not insignificantly, the estate had no money to defend a full blown hearing on the merits.

Brattain says that he safeguarded the promissory note on the off-chance that it might someday be paid. When the lawyers discovered that the estate had resolved its tax problems and remained solvent, they filed a petition for allowance.

The affidavit testimony of another lawyer, Jerome Shulkin, basically confirmed Brattain's account. Shulkin's time sheets reflect that he spoke to Savell and was told that the estate might be insolvent. Shulkin affirmed that he did nothing to pursue the claim, because he accepted Savell's statement that "there was no money in the estate to pay claims." [2]

Savell states that he intended the December 22 letter to serve as a notice of disallowance, and also recalls orally informing Brattain that the claim would be disallowed, that the State Bar might be asked to arbitrate the claim, and that additional, unspecified Bar involvement was possible. Savell agrees that he subsequently discussed the estate's poten-

tial insolvency with Brattain, but insists that he also reiterated during that or another conversation that the lawyers' claim was disallowed.

A probate master concluded that the Savell letter constituted a valid notice of disallowance and that the claim was therefore time-barred under AS 13.16.475(a). The master further stated that as an "alternative to concluding as a matter of law that the Savell Letter constitutes plain notice of disallowance on its face ... undisputed facts exist which support the conclusion that [the lawyers] objectively understood the letter ... to be a notice of disallowance." That is, the master considered the claim barred regardless of whether the Savell letter was a valid notice of disallowance. The superior court adopted the master's findings and recommendation and granted summary judgment. The lawyers appeal.

## III. DISCUSSION

### A. Standard of Review

 Summary judgment will be affirmed if the record presents no genuine issue of material fact and if the moving party was entitled to judgment on the law applicable to the established facts. *Hernandez–Robaina v. State,* 849 P.2d 783, 785 n. 2 (Alaska 1993). Whether the Savell letter constituted a legally adequate notice of disallowance under AS 13.16.475(a) is a question of law which we review de novo, adopting the rule which is most persuasive in light of precedent, reason and policy. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

### B. The Savell Letter Was Not a Proper Notice of Disallowance

### 1. Case law

 The parties agree that a notice of disallowance must be "clear and unequivocal" if it is to initiate the sixty-day period after which claims are barred. *See* Andrea G.

**2.** Shulkin's records also reflect that Savell told him that the claim was disallowed. This conversation did not occur, however, until March 1985. Consequently, this conversation is of no relevance to the status of the lawyers' claim, because it occurred after the date on which unresolved

claims against the estate would have been deemed to be allowed as a matter of law. AS 13.16.475(a). For a discussion of whether the lawyers had actual notice that their claim was disallowed within 60 days of the Savell letter's mailing, however, *see* III.C., *infra.*

Nadel, Annotation, *What Constitutes Rejection of Claim Against Estate to Commence Running of Statute of Limitations Applicable to Rejected Claims,* 36 A.L.R.4th 684, 688 (1985) (rejection must be "clear, unequivocal, and leave no room in the creditor's mind that the claim has been disallowed").

■ In support of their contention that the Savell letter was not a sufficient notice of disallowance, the lawyers cite *Hawkes Hospital v. Colley,* 2 Ohio St.3d 40, 442 N.E.2d 761 (1982). That opinion states:

> If there has been, concurrent with the alleged rejection, an agreement to refer; or if . . . at the time of the alleged rejection, the administrator does or says anything from which the claimant may *reasonably* infer that the determination to dispute or reject the claim is not final, but that it will be further examined or considered, the administrator may not set up such a dispute as a rejection.

*Id.,* 442 N.E.2d at 763 (quotation omitted) (citations omitted). *Hawkes Hospital* held that the letter at issue violated this standard, because although the letter stated plainly in its final paragraph that the claim was rejected, its opening paragraph said that the claim had been referred to the probate court for a determination of validity. *Id.,* 442 N.E.2d at 763. Because of this "unmistakable inconsistency," the court ruled that the letter could not serve as a notice of disallowance. *Id.*

The lawyers also cite *Lowery v. Hairston,* 73 Md.App. 189, 533 A.2d 922 (1987). In *Lowery,* the claimants were attempting to exercise an option granted by the deceased, but their letters to the estate went unanswered. The claimants' lawyer then wrote the estate asking for confirmation that the claim was denied. *Id.,* 533 A.2d at 924. In the court's view, the estate's response was not a "flat-out rejection," and could "be read to mean that . . . settlement may be had in the future." *Id.,* 533 A.2d at 927–28. Consequently, the court held that the letter was "too vague and indefinite to qualify" as a notice of disallowance. *Id.,* 533 A.2d at 927.

The estate downplays the importance of case law on this subject. It correctly characterizes the cases as fact-specific in nature and argues that "[n]o case has been found

which is similar enough to Mr. Savell's letter . . . to decide this dispute." We find some similarities, however, between the case at bar and the cases cited by the lawyers. Accordingly, while those cases do not resolve the instant dispute, their analysis is helpful.

Like the letter in *Hawkes Hospital,* the Savell letter is characterized by a tension between its opening paragraph, which implies that the estate's representative would make a decision about the claim *after* the lawyers provided more information, and its fourth paragraph, which states that "it would be safer to disallow the claim," and sets forth the statute of limitations for filing suit. This tension may not rise to the level of an "unmistakable inconsistency," 442 N.E.2d at 763, but it violates *Hawkes Hospital*'s principle that an estate's communication to a claimant will not be considered a rejection of a claim when the estate does or says anything from which one might reasonably infer that there has been no final decision and that the claim will be further considered. *Id.* In addition, like the letter in *Lowery,* the Savell letter does not seem to be a "flat-out rejection." 533 A.2d at 927. Rather, it appears mainly to be an invitation to provide more information. In sum, these out-of-state cases imply that the Savell letter was "too vague and indefinite to qualify" as a notice of disallowance. *Lowery,* 533 A.2d at 927.

### 2. *The Savell letter fails to meet the "clear and unequivocal" standard*

Some passages of the letter arguably support the estate's assertion that the letter constitutes a notice of disallowance. Specifically, the fourth paragraph states: "Lest we drop the ball and delay acting upon the claim while waiting for a response from you, it would be safer to disallow the claim pending receipt of the requested documentation." However, the lawyers' reading of this portion of the letter is not implausible. They contend that

> [t]he phrase " . . . it would be safer to disallow the claim . . . ." could easily be interpreted to mean that the writer, in the ordinary course of events, would not give the claimant an opportunity to provide ad-

ditional information since to do so would necessarily involve risk to the Estate, but in this case, (presumably as a professional courtesy) the writer would make an exception and wait for the requested information before making a final determination.

Another passage cited by the estate reads, "Of course, the personal representatives will reconsider *any decision* within the next sixty days if the requested material is provided. After sixty days the claim will be barred under AS 13.16.475." (Emphasis added.) The estate argues that by referencing the sixty-day period which begins to run after a notice of disallowance, the letter clearly informs the lawyers that their claim has been denied. The passage seems capable of another interpretation, however. Since the letter refers to "any decision" instead of "this decision" or "the disallowance," the sentence can also be read to indicate that a decision will be made at some future date.

The overall structure of the Savell letter supports the proposition that it fails to meet the "clear and unequivocal" standard that applies to notices of disallowance. The focal point of the letter seems to be the paragraph in which Savell asks the lawyers for documentation of the fees underlying the promissory note. As the A.L.R. Annotation explains:

> Where the executor or administrator of an estate, when presented with a claim, has requested a bill of particulars or further information in connection with the claim, several courts have held that such conduct ... did not amount to a rejection of the claim for purposes of commencing the statute of limitations ..., the view being taken that such behavior was inconsistent with an unequivocal rejection of the claim, and had the effect of inducing the claimant not to bring suit within the statutory period.

Nadel, 36 A.L.R.4th at 688. Moreover, the letter's crucial opening and closing passages strongly imply that a final decision on the claim is not contained in the letter, but will occur at a later date. The first paragraph states that Savell "will need more information in order to advise the personal representative in making a determination as to [the lawyers'] claim." The final paragraph anticipates cooperation with the request "so that a satisfactory resolution of this claim can be reached."

In sum, the Savell letter does not contain a "flat-out rejection," but rather contemplates further consideration of the lawyers' claim after their submission of additional information to the estate. Because a notice of disallowance must be clear and unequivocal, we hold that the Savell letter does not constitute an adequate notice of disallowance.

## C. *Summary Judgment Was Not Properly Entered on the Basis that the Lawyers Had Actual Notice of the Estate's Disallowance of their Claim*

### 1. *Actual notice*

■■■ The trial court adopted an alternative rationale articulated by the probate master, who found that "undisputed facts exist which support the conclusion that [the lawyers] objectively understood the letter ... to be a notice of disallowance." If this conclusion were correct, then the lawyers' claim would be time-barred under AS 13.16.475(a) regardless of whether the Savell letter constituted a proper notice of disallowance.[3] An examination of the record, however, reveals that while it *may* be true that the lawyers had actual notice that their claim was rejected, it is incorrect to characterize this conclusion as supported by "undisputed facts."

The master originally based her finding that the lawyers knew that their claim was rejected on the "undisputed" fact that Savell had orally informed Brattain of the disallowance. This portion of the master's findings was subsequently deleted, however, in implicit recognition of the fact that Brattain disputed Savell's account of the oral communication. The amended opinion maintained the position that the lawyers knew that their

---

**3.** In other circumstances we have held that a statutory requirement to give written notice need not be satisfied if actual notice has been provided. *Morkunas v. Anchorage Tel. Util.*, 754 P.2d 1117, 1120 (Alaska 1988) (provision of actual notice amounts to substantial compliance with code provision requiring written notice); *In re L.A.M.*, 727 P.2d 1057, 1060–61 (Alaska 1986) (violation of notice requirement would be harmless if actual notice existed).

claim was denied, but reached this conclusion inferentially, based on (1) the fact that there was no further correspondence between the parties after the Savell letter and (2) the fact that for nearly ten years the lawyers took no action on their claim.

It was improper for the master to conclude from these facts that the lawyers must have known that their claim was rejected. This inference was not a mere recognition of undisputed testimony, as would be appropriate at the summary judgment stage. Rather, it was a rejection of Brattain's affidavit testimony, wherein he asserts that his inaction was a product of his understanding that Savell had allowed the claim to lapse into *acceptance* because the estate had no money to pay the claim and, under such circumstances, it made no sense to reject the claim and invite litigation.[4]

The trial court's finding resulted from the master's choice between the parties' competing accounts of the facts. On summary judgment, such a choice was inappropriate and must be reversed. While actual notice can serve as a substitute for a properly executed notice of disallowance, the issue of whether the lawyers had actual notice presents a genuine issue for trial.

### 2. Inquiry notice

█ The trial court also adopted the master's conclusion that because the plaintiffs were lawyers, the Savell letter's references to a sixty-day time-bar put them on inquiry notice as to whether their claim had been disallowed. The master reasoned that "an attorney exercising the reasonable care expected of counsel should/would have made further inquiry regarding the status of the claim before the 60–day period had expired."

█ We reject this inquiry notice theory as inconsistent with the law applicable to notices of disallowance. It is the estate's responsibility to compose and dispatch a notice of disallowance, AS 13.16.475(a), and the

law demands that such notices be clear and unequivocal in order to facilitate communication and allow the parties to expeditiously reach the gravamen of a probate claim. *See* III.B., *supra.* An "inquiry notice rationale" would frustrate this purpose, replacing the current legal regime with one in which an estate would be encouraged to hint at disallowance in a way which would alert a competent attorney that her client's claim might be in jeopardy. Since the law should promote clear communication rather than obfuscation, we decline to hold that in the absence of a proper notice of disallowance, inquiry notice is sufficient to initiate the running of the sixty-day period in which a petition for allowance must be filed.

### IV. CONCLUSION

The Savell letter was not clear and unambiguous, and thus was not a valid notice of disallowance under AS 13.16.475(a). Additionally, there are material facts at issue as to whether the lawyers had actual notice in late 1983 that their claim had been disallowed. Consequently, this case was improperly resolved on summary judgment, and we REVERSE and REMAND for further proceedings.

█

---

**4.** As explained in note 1, *supra,* it is undisputed that a March 1985 conversation between Shulkin and Savell eventually put the lawyers on notice that Savell had disallowed the claim. This fact does not support the lower court's grant of summary judgment, however. Unless the estate sent the lawyers a notice of disallowance within sixty days after December 12, 1983, the claim would be considered allowed as a matter of law under AS 13.16.475(a). A conversation that did not occur until March of 1985 is thus of no relevance in determining the status of the lawyers' claim.