John **CHAMBERLIN**, et al.

v.

Linda **CARTER**, etc., et al.

Civ. No. K–93–525.

United States District Court,
D. Maryland.

Nov. 3, 1993.

---

Richard R.P. Wyrough, Cain & Wyrough, Upper Marlboro, MD, for plaintiffs John Chamberlin and Gloria Chamberlin.

Robert P. Fletcher, and Robert Charles Bernius, Nixon, Hargrave, Devans & Doyle, Washington, DC, and Willi Joseph Selle, Annapolis, MD, for plaintiff The Resolution Trust Corp., as Conservator for Second National Federal Sav. Ass'n.

Rita Kaufman Grindle, and Linda C. Carter, Meyers, Billingsley, Shipley, Rodbell & Rosenbaum, Riverdale, MD, for defendant Linda Carter, as Personal Representative for the Estate of Dorothy Cormier.

Alan N. Schlaifer, Washington, DC, for defendant Isabelle Cormier, a Personal Representative for the Estate of George Cormier.

FRANK A. KAUFMAN, Senior District Judge.

Plaintiffs in the within action ask this Court to determine that certain claims which they assert against the estates of George Cormier and his wife Dorothy Cormier (Estates) are valid. These claims result from loans by plaintiffs for the amount of their loans to the Cormiers which were used by the Cormiers to finance the purchase of a parcel of land in Stevensville, Md., in November 1988, for $285,000. Plaintiff Resolution Trust Corporation (RTC), Conservator for the Second National Federal Savings Association (Bank), now pursues the Bank's claim based on the Bank's loan to the Cormiers of $215,000 secured by a first Deed of Trust. Plaintiffs John and Gloria Chamberlin seek repayment of a $70,000 loan which was secured by a second purchase money mortgage.

For the reasons indicated *infra*, this Court concludes that plaintiffs' claims may be validly asserted against the Estates.

## PROCEDURAL HISTORY

In connection with the administration of the Estates, both of the Estates timely filed in the Orphans' Court for Prince George's County, Maryland, Notices of Intent to Disallow Claims dated Jan. 28, 1992, informing the Bank and the Chamberlins that the latters' respective purported claims would not be honored. After the Bank and the Chamberlins filed responses, counsel presented the matter to that court during a hearing held in May 1992. On June 30, 1992, that court decided in favor of the Estates, denying the claims of the Banks and of the Chamberlins as not having been timely and appropriately filed. Pursuant to MD.CODE ANN., CTS. & JUD.PROC. § 12–502 (1989), both creditors timely noted their appeals to the Circuit Court for Prince George's County.[1] In so doing, each creditor filed a separate appeal against each estate. In response to a Motion to Consolidate made by the Estates, the Circuit Court, on October 22, 1992, ordered the consolidation of the four separate appeals for purposes of trial. On Dec. 4, 1992, the RTC was appointed conservator of the Bank. On Feb. 19, 1993, the RTC filed a timely Notice of Removal to this federal district court of the consolidated action, pursuant to 12 U.S.C. 1441a($l$)(3) (Supp.1993).[2] The RTC untimely filed its certificate of compliance with Local Rule 103.5.a on June 2, 1993.[3]

In a May 4, 1993, Memorandum and Order to counsel, this Court concluded that it had removal jurisdiction over the entire consolidated case, both with regard to the Bank's claims (now those of the RTC) and the claims of the Chamberlins. The cases, having been consolidated for trial by the Circuit Court

---

1. Section 12–502 allows 30 days from the date of final judgment by the Orphans' Court for the filing of an appeal to the Circuit Court. Such appeal is heard *de novo*. *See* MD.CODE ANN., CTS. & JUD.PROC. § 12–502 (1989). The Chamberlins noted their appeals on July 19, 1992, and the Bank noted its appeals on July 28, 1992.

2. § 1441a($l$)(3) provides in pertinent part:

   **(A) In general**
   The Corporation [RTC], in any capacity and without bond or security, may remove any action, suit, or proceeding from a State court to the United States district court with jurisdiction over the place where the action, suit, or proceeding is pending, to the United States district court for the District of Columbia, or to the United States district court with jurisdiction over the principal place of business of any institution for which the Corporation has been appointed conservator or receiver if the action, suit, or proceeding is brought against the institution of the Corporation as conservator or

receiver of such institution. The removal of any such suit or proceeding shall be instituted—
   (i) not later than 90 days after the date the Corporation is substituted as a party, ...
12 U.S.C. 1441a($l$)(3)(A) (Supp.1993).

3. That rule provides in pertinent part:

   **a. *Certification of filing of State court papers.*** Any party effecting removal shall file with the notice true and legible copies of all process, pleadings, papers and orders which have been served upon that party. Within 30 days thereafter the party shall file true and legible copies of all other papers then on file in the State Court, together with a certification from counsel that all filings in the State Court action have been filed in the United States District Court.
   D.Md.R. 103.5.a.
   The failure of the RTC to file within the 30-day period has not prejudiced any party in this case and accordingly will not be deemed adversely to affect RTC's claims herein.

prior to their removal to this Court, remain so consolidated.[4]

All three parties filed motions for summary judgment with this Court on July 1, 1993. In a subsequent telephone conference on October 4, 1993, counsel for all three parties stated that those motions should be deemed moot and agreed to present this case to this Court for determination of the pending legal issues. In that regard, the parties agreed that there are no relevant or material factual disputes.

## FACTUAL BACKGROUND

In November 1988, George and Dorothy Cormier borrowed $215,000 from the Second National Bank, now succeeded by the RTC, and $70,000 from John and Gloria Chamberlin, and used the money to purchase a lot in Stevensville, Md. The loan from the Bank was secured by a first deed of trust, while the Chamberlins' loan was secured by a second purchase money mortgage. On January 22, 1989, both Cormiers died in a car accident. Deborah Cormier was appointed personal representative of both estates, beginning on March 8, 1989, with regard to Dorothy Cormier, and February 27, 1989, with regard to George Cormier.[5] William Reed, who had represented the Estates, continued in that capacity and oversaw all dealings concerning the Estates on behalf of the personal representative.[6]

Mr. Reed, in two letters of February 16, 1989, informed Second National and the Chamberlins that the Cormiers had died. Mr. Reed "assure[d]" the Chamberlins that "the loan will be paid" and stated that the Cormier family desired to "maintain your loan in good standing." [7] Similarly, Mr. Reed wrote to the Bank, asking it to confirm "the unpaid balance of this loan" and inquiring as to certain other details of the decedents' arrangement with the Bank.[8]

On June 5, 1989, an attorney for the Chamberlins, Robert Price, responded to Mr. Reed, stating "[t]his letter shall constitute notice to you, as attorney for the Estate[s]," that the loan was in default. The letter listed the overdue payments not yet received by the Chamberlins and stated that, unless the payment schedule was "brought to date," the "entire principal amount outstanding and accrued interest thereon shall become due and payable at the option of my clients." [9]

Earlier, on Feb. 27, 1989, a "mortgage payment processor" for Second National had responded to Mr. Reed's correspondence, providing information regarding the Cormiers' deed of trust, including the duration and terms of the loan, its date of payment, and current principal balance. The letter identified the exact amount due each month and broke it down into interest and an escrow amount to cover county taxes. The letter also referred to an apparent telephone con-

---

4. In its Memorandum and Order to counsel, this Court concluded that "it has removal jurisdiction with regard to the entirety of each and all of the four cases which originated in the Orphans' Court.... In that context, Ms. Carter [Estates' counsel] stated during the aforementioned April 28, 1993 proceeding [an on-the-record telephone conference], that she is not pressing her original position that the claims of the Chamberlins should be severed from the within case and remanded to the Circuit Court." See Mem. & Order at ¶ 2.

This Court also indicated that, "[if], upon examination of the summary judgment record, this Court concludes that the Resolution Trust Corporation's motion for summary judgment should be denied, so that only the Chamberlins' claims remain before this Court, this Court may remand, in its discretion, those claims to the Circuit Court for Prince George's County, subject to satisfying itself as to the timeliness of such remand and as to its power so to remand." See id. at ¶ 7. Given the disposition of this case in favor

of both plaintiffs, that contingency no longer retains significance.

A copy of the said Memorandum & Order has been placed in the Court file in this case.

5. Consequently, as is discussed infra in the body of this opinion, the relevant deadlines for filing a claim under § 8–103 are Sept. 8, 1989, for claims versus Dorothy Cormier's estate, and August 27, 1989, for claims against George's estate.

6. See Ex. E to RTC's Mot. for S.J. at 38.

7. Letter of William Reed to the Chamberlins, Ex. 8 of Appellees' Mem. in Supp. of Mot. for S.J.

8. Letter of William Reed to Second National, Ex. 9 of Appellees' Mem. in Supp. of Mot. for S.J.

9. Letter of Robert R. Price, III, to William Reed, Ex. 9 to Chamberlin Mem. in Supp. of Mot. for S.J.

versation between the Bank representative and Mr. Reed, stating the Bank's understanding that Deborah Cormier would be "taking over the payments" on the loan.[10]

The Chamberlins filed formal claims against both Estates with the Register of Wills of Prince George's County on April 16, 1990, and again on December 7, 1990.[11] Second National did not file its formal claims until May 14, 1992.[12]

As the result of litigation between Deborah Cormier and Isabelle Cormier, George's mother, Deborah decided to resign as personal representative of George's estate. She also resigned as personal representative of Dorothy's estate when it was discovered that MD.CODE ANN., EST. & TRUSTS § 5–105(b)(4) (1991) apparently prohibited her, as a non-resident alien, from holding such a position. Isabelle Cormier replaced her as representative of George's estate, and Linda C. Carter, Deborah's personal attorney retained by her to represent her in the litigation against Isabelle, became personal representative of Dorothy's estate. Both replacements were approved by the Register of Wills of Prince George's County on August 5, 1991.[13] Following those events, Ms. Carter and Mr. Alan Schlaifer, Isabelle's attorney, decided to proceed as co-counsel for both estates, with the consent of both Isabelle and Deborah.

On October 18, 1991, Isabelle and Deborah Cormier, purporting to act as personal representatives of the two Estates, signed a "letter of intention" to the Bank indicating their desire to "payoff or refinance th[eir] account with another institution."[14]

Mr. Schlaifer, then attorney to Isabelle Cormier, wrote a Jan. 25, 1991, letter to the Orphans' Court, acknowledging the Chamberlins' "basic claim," though contesting the Chamberlins' assertions of unwillingness by the Estates to make payments and arguing against acceleration of payments. Mr. Schlaifer stated his client's intent to make all payments current and communicated his efforts to arrange a sale of the property, with proceeds going to the Bank and the Chamberlins to the extent required to pay them in full. With regard to any remainder due, Mr. Schlaifer wrote that the Chamberlins should be treated as unsecured creditors of the Estates.[15]

The Estates appear to have continued to make relatively regular payments until at least November 1991 to Second National and December 1991 to the Chamberlins.

On January 28, 1992, both Estates issued Notices of Intent to Disallow the claims of the Chamberlins and the Bank on the ground that claimants had untimely filed their claims.[16]

In denying the claims at issue in this case as untimely and inappropriately filed, the Orphans' Court of Prince George's County filed an opinion on June 30, 1992.[17] In this

---

10. *See* Letter of Dawn S. Carey to William Reed, Ex. A–7 to RTC's Mot. for S.J.

11. *See* Exs. 12A, 12B, 13, 14 to RTC's Mot. for S.J.

12. *See* Ex. 22 to RTC's Mot. for S.J.

13. *See* Exs. 10, 11 to RTC's Mot. for S.J.
    Isabelle Cormier's appointment apparently took effect on Aug. 8, 1991. *See* Ex. 10 to RTC's Motion for Summary Judgment. Linda Carter's appointment, though granted on Aug. 5, for some reason does not seem to have taken effect until May 8, 1992. *See* Ex. 11 to RTC's Motion for Summary Judgment. The reason for the apparent delay remains unclear from the record before this Court. In any event, the delay concerning Ms. Carter's appointment as personal representative implicates no significant issue in this case.

14. Ex. 21 to RTC's Mot. for S.J.

15. *See* Letter of Alan N. Schlaifer to Orphans' Court, Ex. 13 to Chamberlins' Mem. in Supp. of Mot. for S.J.

16. *See* Ex. 15 to RTC's Mot. for S.J.

17. In that opinion, that court discussed the applicability of MD.CODE ANN., EST. & TRUSTS §§ 8–110 and 8–111, stating that "it appears inescapable that the creditor must make an election of remedies" pursuant to those sections. In reaching that conclusion, the court noted that the Comment "added to the section [8–111] in the older volumes of the code [which was] ... taken from the comments made in the Henderson Commission Report ... [is] [o]f particular help." However, the Orphans' Court based its decision on sections 8–103 and 8–104, concluding that "the correspondence exchanged early in the administration was [not] sufficient to meet the requirements of § 8–104" to preserve claims "outside of the lien rights." Opinion &

Court's view, the decision of the Orphans' Court denying plaintiffs' claims is erroneous for two reasons. First, the Bank and the Chamberlins appear to have substantially complied with the requirements of the applicable Maryland statutes, which mandate that claims be filed within six months of the appointment of a personal representative. Second, even if plaintiffs did not comply with those statutes, defendants are estopped by their conduct from relying on a limitations defense.

### Claims Timely Filed

■ At the time of the Cormiers' deaths, MD.CODE ANN., EST. & TRUSTS § 8–103 (1974) provided in pertinent part:

(a) *General:* Except as otherwise expressly provided by statute with respect to claims of the United States and the state, all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the Personal Representative, and the heirs and legatees, unless presented within six months after the appointment of a Personal Representative.

. . . . .

(e) *Liens not affected:* Nothing in this section shall affect or prevent an action or proceeding to enforce a mortgage, pledge, judgment or other lien, or security interest upon property of the estate.

Also, at that time, MD.CODE ANN., EST. & TRUSTS § 8–104 (1974) provided in pertinent part:

(a) *Presentation of claims.*—Claims against an estate of a decedent may be presented as provided in this section.

(b) *Delivery to the personal representative.*—The claimant may deliver or mail to the personal representative a verified written statement of the claim indicating its basis, the name and address of the claimant, and the amount claimed. If the claim

is not yet due, the date when it will become due shall be stated. If the claim is contingent, the nature of the contingency shall be stated. If the claim is secured, the security shall be described. The failure of the claimant to comply with the provisions of this section or with the reasonable requests of the personal representative for additional information may be a basis for disallowance of a claim in the discretion of the court.

Defendants contend that plaintiffs failed to comply with the six-month period in which they could file claims under § 8–103. That period expired on August 27, 1989, with respect to claims against George Cormier's estate, and Sept. 8, 1989, with respect to claims against the estate of Dorothy Cormier. Plaintiffs RTC, successor to the Bank,[18] and the Chamberlins assert that their letters of Feb. 27, 1989, and June 5, 1989, respectively, when read in the light of the surrounding communications, substantially complied with the requirements of the statutes and therefore constituted timely claims.

· In order to establish timely notice of their claims under §§ 8–103 and 8–104, plaintiffs only need show "substantial compliance" with those statutory requirements. *See Lampton v. LaHood,* 94 Md.App. 461, 469, 617 A.2d 1142 (1993); *Lowery v. Hairston,* 73 Md.App. 189, 197, 533 A.2d 922 (1987). The Court of Special Appeals of Maryland in *Lowery* specifically referred to the "forms of presentment" of a claim delineated in § 8–104(b) as "permissive and not mandatory in nature" and reiterated that, even if a claimant fails to comply with the section, such failure " '*may* be a basis for disallowance of a claim in the discretion of the court.' " *Lowery,* 73 Md. App. at 197 n. 2, 533 A.2d 922 (quoting § 8–104(b)) (alteration in original).

Where the claim is for the payment of money, that necessarily implies some statement of, or method of calculating, the amount being sought. . . . Section 8–103, read in conjunction with § 8–104, requires

Order, Ex. 17 to Appellees' Mem. in Supp. of Mot. for S.J. at 2–3.

18. Unless differentiation is required, the appellations "Bank," "Second National," and "RTC"

will be used interchangeably to denote the party presently pursuing claims relating to the loan to the Cormiers from Second National Bank.

that the claim directed to be presented within the six-month period be sufficiently clear and certain as fairly to apprise the personal representative of what the claimant is seeking.... The personal representative cannot be left to guess what kinds of specific claims might eventually spring forth from ... [a general] prayer [for relief] at one or more points in the future.

*Campbell v. Welsh,* 54 Md.App. 614, 631–32, 460 A.2d 76 (1983).

The requirements of § 8–104(b) break down into the following features of a proper claim:

1. the statement should be verified;

2. the statement should be in writing;

3. the statement should indicate its basis;

4. the name and address of the claimant should be listed; and

5. the amount claimed should be specified.

*See* § 8–104(b).

Furthermore, three other requirements may apply, depending on the nature of the specific claim at issue:

1. if the claim is not yet due, the date when it will become due should be stated;

2. if the claim is contingent, the nature of the contingency should be stated; and

3. if the claim is secured, the security should be described.

*See id.*

The Chamberlins' June 5, 1989, letter to William Reed, when considered in conjunction with Mr. Reed's Feb. 16, 1989, letter to the Chamberlins, appears to satisfy four of the five generally applicable requirements of § 8–104(b) and all of the applicable additional requirements. First, the letter was in writing. It notified the Estates that the loan was in default, stated that only one payment had been received, and listed the entire amount of the debt claimed. Mr. Reed addressed his letter to the Chamberlins, and Mr. Price, in his written communication to Mr. Reed, provided his own address and telephone number. The only requirement of the first five which is missing is verification.

With regard to the additional elements mentioned, Mr. Reed's letter to the Chamberlins adequately described the nature of the security for the loan, and Mr. Price informed the Estates that, unless payments were made current by July 19, 1989, the "entire principal amount outstanding and accrued interest thereon shall become due and payable at the option of my clients." [19]

Similarly, the Bank's letter of Feb. 27, 1989, to Mr. Reed, when viewed in conjunction with Mr. Reed's Feb. 16 letter, also seems to have met four of the five generally applicable requirements and all of the additional relevant elements. It is in writing, implicitly indicates the claim's basis by referring to the loan and to Mr. Reed's earlier letter describing the security and deed of trust, provides the name and address of the Bank, and specifies the current principal balance and duration and terms of the loan. It also provides the date on which the entire loan becomes due and payable.

When interpreted in the light of Mr. Reed's earlier correspondence to both claimants, Mr. Price's and the Bank's letters were "sufficiently clear and certain as fairly to apprise the personal representative of what the claimant[s] [are] seeking." *Campbell,* 54 Md.App. at 632, 460 A.2d 76.

■ Defendants point out, and plaintiffs concede, that both Mr. Price's and the Bank's letters were not "verified," as § 8–104(b) seems to require. However, that shortcoming does not appear to be fatal to plaintiffs' claims. First, as the court in *Lowery* noted, the entire tenor of § 8–104 is permissive. *See Lowery,* 73 Md.App. at 197 n. 2, 533 A.2d 922; *see also* MD.CODE ANN., EST. & TRUSTS § 8–104(a) (stating that "[c]laims

---

**19.** Letter of Robert Price to William Reed, Ex. 9 to Chamberlin Mem. in Supp. of Mot. for S.J.

While the letter did not specify a final due date for the entire loan should payments be brought current, the letter as a whole seems to have

provided enough information to comply sufficiently with the statute's requirements. It appears from the Promissory Note that all indebtedness was required to be paid in full by Nov. 28, 1993. *See* Ex. 1 to Chamberlins' Mem. in Supp. of Mot. for S.J.

against an estate of a decedent *may* be presented as provided in this section") (emphasis added). Second, in *Lowery*, the court accepted as valid claims letters sent from the claimant's attorney to the personal representative of the estate. *See Lowery*, 73 Md.App. at 197, 533 A.2d 922. It appears from the court's description of the letters that they were not "verified" as is provided in § 8–104(b). *See id.* at 192–93, 533 A.2d 922. At any rate, the court did not mention whether the letters were verified or not. *See id.*

Defendants' invocation of *Lampton* seems similarly unavailing. In *Lampton*, the court held that oral communications themselves could not constitute claims. *See Lampton*, 94 Md.App. 461, 617 A.2d 1142. However, in *Lampton*, the court, in discussing its earlier decision in *Lowery*, characterized *Lowery* as "holding that three *letters* from the plaintiffs to the personal representative . . . constituted substantial and timely compliance with" §§ 8–103 and 8–104. *Id.* at 469, 617 A.2d 1142 (emphasis in original). The court in *Lampton* further discussed the statutory requirements as mandating "a *writing* of some kind." *Id.* at 470, 617 A.2d 1142 (emphasis in original). Given *Lampton*'s standard of "substantial compliance," discussed *supra* at 874, this Court does not view the failure of plaintiffs to verify their statements to defendants as dispositive.[20]

█ Defendants also contend that plaintiffs' failure to mail their letters directly to the personal representative, at that time Deborah Cormier, runs afoul of the statutory requirements. They cite no authority for that proposition, and this Court can see little difference between communicating with the personal representative herself or the attorney whom the personal representative had designated to deal with all of the estates' affairs. Both Mr. Reed and Ms. Cormier stated during their depositions that Mr. Reed had been entrusted with handling "all aspects of the proceedings."[21] Furthermore, in his Feb. 16 letters to plaintiffs, Mr. Reed advised them that he was "representing the estates."[22] Finally, there is no indication that Deborah Cormier was unaware of the communications between Mr. Reed and the plaintiffs, and defendants make no such claim. "Actual knowledge" is not the touchstone for deciding whether there has been a claim under § 8–103, *see Lampton*, 94 Md.App. at 470, 617 A.2d 1142; however, the existence of actual knowledge is helpful in determining whether a writing substantially complies with the statute. While mailing the letters to Mr. Reed may not have complied with the technical language of § 8–104, it does appear substantially to have complied with the statute.

Defendants raise two further points of a technical nature, first alleging that the failure of plaintiffs to denote clearly that their letters were meant as claims renders them insufficient, and then stating that, as the letters only constituted an "intent to make a claim,"[23] they did not themselves constitute claims. Defendants cite no authority in support of those contentions. Nor do those contentions appear meritorious. Both letters appear to give sufficiently detailed notice to defendants as to the nature of plaintiffs' claims. Again, it is to be noted: "strict compliance" with the statute is not required. *See Lampton*, 94 Md.App. at 469, 617 A.2d 1142.

20. Defendants, in their Memorandum in Support of Summary Judgment, mention that the suggested form contained in § 8–104(c) includes an affirmation. *See* Appellees' Memorandum in Support of S.J. at 11. A careful examination of the statute reveals that this suggested form obtains only if the claimant chooses to file with the Register of Wills, not if he or she communicates with the personal representative directly pursuant to 8–104(b). *See* § 8–104(c). In any event, the letters provided by plaintiffs seem to contain *more information* than that recommended by the suggested form appearing in § 8–104(c), a fact tending to bolster plaintiffs' contention that they have substantially complied with the statute.

21. *See* Ex. D to RTC's Mot. for S.J. at 6–8 (deposition transcript of William Reed); *see also* Ex. E to RTC's Mot. for S.J. at 38 (deposition transcript of Deborah Cormier).

22. Letter of William Reed to Bank, Ex. 9 of Appellees' Mem. in Supp. of Mot. for S.J.; *see also* Letter of William Reed to Chamberlins, Ex. 8 to Appellees' Mem. in Supp. of Mot. for S.J.

23. Appellees' Response to Opposition to Mot. for S.J. Filed by John and Gloria Chamberlin at 2.

■ Defendants also contend that the ongoing attempts of the Estates to make their monthly payments on the loans, and the acceptance of those payments by plaintiffs, demonstrates that the defendants were not apprised clearly of the nature of the relief which plaintiffs were seeking. *See Campbell,* 54 Md.App. at 632, 460 A.2d 76. This Court disagrees with defendants' characterizations. The letters of plaintiffs explicitly indicated the extent of defendants' overall liability and defendants' options for satisfying that liability. The Estates could have continued to make their monthly payments and then paid the respective entire amounts remaining on the due dates of the loans or could have attempted to satisfy their entire obligations at any time. This does not appear to comprise the sort of confusion discussed in *Campbell, supra,* where the defendant estate had not been presented with any indication of the amount of money owed. *See Campbell,* 54 Md.App. at 632, 460 A.2d 76. Furthermore, the Jan. 25, 1991, letter from Alan Schlaifer, indicated that defendants realized that they would be responsible for any deficiency remaining after the sale of the underlying property.[24] Though written well after the time for filing claims had expired, that letter nonetheless sheds light on the knowledge and understanding of the defendants during the relevant time period.

### Election Not Required

■ Defendants raise an additional defense by claiming that plaintiffs failed to comply with the requirements of MD. CODE ANN., EST. & TRUSTS §§ 8–110 and 8–111 (1991), thereby rendering their purported claims insufficient and untimely under § 8–103. For the foregoing reasons, this Court rejects that defense.

MD.CODE ANN., EST. & TRUSTS §§ 8–110 and 8–111 (1991) provide as follows:

**§ 8–110. Claim not yet due.**

(a) *Unsecured claim.*—Upon proof of an unsecured claim which will become due at some future time, and which has not been compromised pursuant to § 7–401 or authority conferred by the will, the court shall direct the investment of an amount which will provide for the payment of the claim when it becomes due.

(b) *Creditor holding security.*—When a creditor holds a security for an allowable claim due at some future time he may rely on his rights under § 8–111 or may file his claim as an unsecured claim not yet due, with the right of withdrawing the claim prior to the taking of action upon it, and rely on his rights as provided in § 8–111 after the withdrawal.

**§ 8–111. Secured claim.**

(a) *Payment upon surrender.*—Payment of a secured claim shall be upon the basis of the full amount if the creditor shall surrender his security. If payment is not made on this basis, it shall be made as provided in subsection (b) or (c) of this section.

(b) *Security exhausted.*—If during administration, the creditor exhausts the security before receiving payment, he is entitled to the full amount of his allowed claim less the amount realized upon exhausting the security.

(c) *Security in whole.*—If the creditor has not then exhausted, or does not have the right to exhaust his security, he is entitled to the full amount of his allowed claim less the value of the security determined by agreement, or as the court determines.

Defendants assert that, as the loans at issue are secured by real property, plaintiffs were required to make an election under §§ 8–110 and 8–111 or, at least, indicate that they wished their claims to be treated as unsecured claims under § 8–110(a) before the expiration of the six-month period provided in § 8–103. Plaintiffs argue that §§ 8–110 and 8–111 do not apply to the situation at bar, and, even if they do, RTC contends that its claim properly should have been considered as a § 8–110(a) claim notwithstanding the Bank's failure to mention that section in its Feb. 27 letter to Mr. Reed or in any subsequent communications.

---

**24.** *See* Letter of Alan ·N. Schlaifer to Orphans' Court, Ex. 13 to Chamberlins' Mem. in Supp. of Mot. for S.J.

The Orphans' Court, in rejecting plaintiffs' claims, discussed the applicability of § 8–111 and interpreted the statute to require a secured creditor to make an election of remedies pursuant to § 8–111.[25] The court concluded that, "[i]n any event, if he [claimant] wishes to preserve his claim rights outside the lien, he must file pursuant to §§ 8–103 and 8–104 and within the limitation period."[26] The court decided that plaintiffs' letters to defendants did not suffice under § 8–104 to constitute a claim.

§ 8–103 makes clear that, even if a secured creditor does nothing, he or she retains rights against the underlying security interest. The Orphans' Court stated no definitive explication of §§ 8–110 and 8–111, but it may be that it interpreted the two sections to require an § 8–111 election of remedies within six months of the appointment of the personal representative. If so, this Court finds itself in disagreement. In this Court's view, neither § 8–103, § 8–110 or § 8–111 nor the Comments thereto mandate that an election of remedies be made during the six-month period prescribed in § 8–103.[27] The Comment to § 8–103 provides in pertinent part:

> In many instances, the assertion of a claim against the heirs or legatees, after the final distribution of the estate, has resulted in considerable, and quite unexpected, hardship.... The continuation of the present six month date is reasonable in that it gives creditors sufficient time to file their claims and at the same time tends to encourage the prompt administration and settlement of estates....
>
> The handling of secured claims is discussed in § .... 8–103(e) [now 8–103(d) ], 8–110, and 8–111. These sections make it clear that the failure of the secured creditor to file his claim does not impair his

right against the security; it only impairs his right to a personal judgment against the personal representative, the heirs, or the legatees.

Comment to MD.CODE ANN., · EST. & TRUSTS § 8–103 (1974 vol.).

The Comment to § 8–111 states in pertinent part:

> [I]n order to avoid the unexpected hardship that can occur to the distributees of an estate, the Commission recommended that unless the creditor has filed his claim within six month after notice to creditors, he should be barred from obtaining any deficiency judgment, having to rely exclusively on his security interest. See also, Comment to § 8–103. In the mortgage situation, the mortgagee will now have the option of (a) filing his claim upon the basis of the full amount of the indebtedness, if he surrenders his security, (b) foreclosing upon his security during the course of administration and if he does not receive full satisfaction, he would be allowed the balance if he files his claim within six months of notice to creditors, or, (c) if he does not foreclose, filing his claim within the six-month period, in which event he will be entitled to receive the amount of his claim less the value of the security.

Comment to MD.CODE ANN., EST. & TRUSTS § 8–111 (1974 vol.).

Neither section 8–110 nor section 8–111 themselves, nor either Comment to them, explicitly requires a secured creditor to make a § 8–111 election of remedy within the six-month period provided in § 8–103. Further, § 8–104 lays out the requirements of a claim that must be filed within the limitations period prescribed by § 8–103. A section 8–111 election of remedies is not one of them.

**25.** *See* Opinion & Order, Ex. 17 to Appellees' Memorandum in Supp. of Mot. for S.J.

**26.** *Id.* at 2–3.

**27.** The Comments to these sections do not appear in the most recent volume of the Code. Citations from these Comments come from the 1974 Code volume, which is the first in which §§ 8–110 and 8–111 appear and which contains the version of § 8–103 in force during the relevant period in this case. The Comments have no

"controlling authority and may not be used to vary the plain language of the statute, ... [but] they are an excellent place to begin a search for the legislature's intent when it adopted the Code." *Jefferson v. Jones,* 286 Md. 544, 548, 408 A.2d 1036 (1979). *Cf. Lowenthal v. Rome,* 57 Md.App. 728, 740, 471 A.2d 1102 (1984) (probate decision treating Comment as shedding illumination upon meaning of statutory language), *cert. denied,* 300 Md. 153, 476 A.2d 722.

In this case, plaintiffs have not chosen an § 8–111 remedy, and no action has yet been taken on their claims. When that time arrives, plaintiffs can be required promptly to decide whether to remain unsecured creditors pursuant to section 8–110(b) or to elect a section 8–111 remedy. Foreclosure upon the underlying property apparently is not required, as the Comment to § 8–111 explicitly recognizes that there may be situations in which a creditor has not foreclosed but has filed a claim within the limitations period. *See* Comment to § 8–111, *supra* (option (c) described in the Comment).

Plaintiff RTC argues that its claim automatically should be treated as if it were filed as an unsecured claim not yet due, under § 8–110(b), leaving it with the right of withdrawal intact. Section 8–110(a) provides with regard to such a claim that "the court shall direct the investment of an amount which will provide for the payment of the claim when it becomes due." MD.CODE ANN., EST. & TRUSTS § 8–110(a). Defendants contend that, if the Bank intended to file its claim under § 8–110, it should have directed the Orphans' Court to proceed in accordance with that statute.[28] But the text of the statute itself does not include such a requirement. Further, that issue need not be decided in this case, given this Court's determination that §§ 8–110 and 8–111 do not require action within the limitations period.

### Ineligibility of the Personal Representative

Plaintiff RTC argues that the alleged ineligibility of Deborah Cormier, under MD. CODE ANN., EST. & TRUSTS § 5–105(b)(4) (1991), to serve as personal representative of the estates, and her subsequent replacement by Isabelle Cormier and Linda Carter, tolled the limitations period until RTC was notified of the replacements.[29] RTC asserts that it was not notified about the new representatives and did not learn of Ms. Carter's appointment until it received the Notice of Disallowance in early Feb. 1992. RTC notes that it filed its formal claim with the Register of Wills within six months of receiving actual notice of the appointment of Ms. Carter. The record does not indicate when RTC learned of Isabelle Cormier's appointment.

MD.CODE ANN., EST. & TRUSTS § 6–303 (1991), dealing with the termination of a personal representative, states that "all lawful acts of a personal representative before the termination of his appointment remain valid and effective." That statute would appear to render any acts taken by Deborah Cormier, or Mr. Reed on her behalf, fully valid and would not allow either plaintiff to escape the statutory limitations period. Further, it is not clear that failure of the new personal representative to notify plaintiffs should extend the limitations period in any event. Plaintiffs do not argue that they were unaware of George and Dorothy Cormier's demise or had no avenue to communicate with the Estates. In any event, this Court need not rule with regard to RTC's said contention, given its conclusion that the Feb. 27 letter, which was sent during the first six months, suffices as a § 8–103 claim.

### Constitutionality of § 8–103

Plaintiff RTC additionally argues that if it did not comply with the limitations provision in § 8–103 as it existed during the relevant period, such non-compliance does not invalidate its claim because that statute was unconstitutional under *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). In *Pope,* the Supreme Court held that a non-self-executing probate statute of limitation involved "significant state action" and violated constitutional guarantees of due process. *See Pope,* 485 U.S. at 487, 108 S.Ct. at 1346, 99 L.Ed.2d at 576, 577. Accordingly, the Court decided that, in such a case, actual notice to creditors was required to satisfy constitutional requirements. *Pope,* 485 U.S. at 491, 108 S.Ct. at 1348, 99 L.Ed.2d at 579.

---

**28.** *See* Appellees' Response to RTC's Opposition to Mot. for S.J. at 3.

**29.** In their filings, defendants state that they "do not concede" that the section precluding Deborah Cormier's service as personal representative is valid, presumably on constitutional grounds. *See* Appellees' Response to RTC's Mot. for S.J. at 13 n. 7. That question is rendered moot by this Court's disposition of this case.

In *Pope*, the Supreme Court contrasted the kind of limitations statute invoked in that case, which prohibited the filing of claims after a period beginning with the commencement of state proceedings, with a "self-executing" type of statute which would run from the date of death. *See Pope*, 485 U.S. at 487, 108 S.Ct. at 1346, 99 L.Ed.2d at 576, 577. A self-executing statute does not offend due process protections. *Id.*

§ 8–103, prior to its amendment in May 1989, did not qualify as a self-executing statute of limitations, as it provided that creditors must submit claims within six months of the appointment of a personal representative. *Lampton*, 94 Md.App. at 473, 617 A.2d 1142. However, subsequent to the Supreme Court's decision in *Pope* and prior to the deaths of the Cormiers, the Court of Appeals of Maryland promulgated on June 3, 1988 Emergency Rule 6–101, entitled "Actual Notice to Creditors." MD.RULES, RULE 6–101 (1989). That rule later was superseded by a 1989 amendment to MD.CODE ANN., EST. & TRUSTS § 8–103 which amendment rendered that section a self-executing statute of limitations, thereby satisfying the *Pope* test. *See Lampton*, 94 Md.App. at 473, 617 A.2d 1142; MD.CODE ANN., EST. & TRUSTS § 8–103 (1991). Rule 6–101 was intended to cure the defect in § 8–103 until the legislature could amend the section. It required that the personal representative, "promptly upon appointment[,] ... make a reasonably diligent effort to ascertain the name and address of each creditor of the decedent" and mail a notice of appointment including the time for filing claims to the creditor. *See* Rule 6–101.

While defendants would not appear technically to have complied with the Rule, the letters sent by Mr. Reed, attorney for the Estates, substantially did satisfy the requirements of the Rule. Further, plaintiffs did receive actual notice, in the form of the letters from Mr. Reed, informing them that he was handling their loans. Actual notice generally satisfies the due process clause of the Fourteenth Amendment, *see Pope*, 485 U.S. at 484, 108 S.Ct. at 1343, 99 L.Ed.2d at 574, and, when given in the context of Rule 6–101, may satisfy the requirements of *Pope*. How-

ever, in this case, this Court need not decide if Rule 6–101 sufficed to make § 8–103, as it existed at the time of the Cormiers' deaths, constitutional as applied to plaintiffs or on its face. That is because this Court's conclusion that plaintiffs' claims were filed timely under § 8–103 renders that question moot.

### Equitable Estoppel

■ In order to create an equitable estoppel, plaintiffs must show that the personal representative of the Estates (1) engaged in "voluntary conduct or representation," (2) upon which the plaintiffs relied in good faith (3) to their detriment. *Lampton*, 94 Md. App. at 476, 617 A.2d 1142. *See Knill v. Knill*, 306 Md. 527, 534, 510 A.2d 546 (1986) (established good-faith component to reliance). Though the question of whether defendants, upon the facts of this case, should be estopped from proffering a limitations defense requires close examination, the three required estoppel elements appear to be present.

As defendants rightly point out, at no time did defendants expressly tell plaintiffs that they need not file claims within the applicable limitations period to protect their money. Defendants further assert that, absent such an express declaration, plaintiffs cannot expressly establish the first prong for estoppel—that of voluntary conduct or representation. However, almost all of the cases which defendants cite in support of that proposition pre-date the 1969 "rewriting of ... [Maryland's] testamentary laws." *Campbell*, 54 Md.App. at 628, 460 A.2d 76. The system put into place at that time, and still extant today, utilizes a "two-tiered set of limitations," imposing "a specific time requirement both on the initial presentment of the claim to the personal representative and on seeking judicial review of his rejection of it." *Id.* at 629, 460 A.2d 76. The old law "focused primarily on the time for filing an action after rejection of the claim by the executor." *Id.* Accordingly, the bulk of the cases relied upon by the defendants are not too helpful. Further, in none of them do the facts add up to implied representations by the debtors as they do herein.

In *Lampton v. LaHood*, a 1993 case, the Court of Special Appeals of Maryland con-

cluded that the oral, express representations of the personal representative to a creditor, without a formal filing, provided an appropriate basis for an estoppel.[30]  *See Lampton,* 94 Md.App. at 479–481, 617 A.2d 1142.  In that decision, Judge Motz discussed the "fiduciary duty to the creditors of the decedent" owed by the personal representative, *id.* at 480, 617 A.2d 1142, emphasizing that a fiduciary has a duty " 'of utmost good faith and loyalty and the obligation . . . to make full disclosure of all known information that is significant, and material.' "  *Id.* (quoting *Impala Platinum v. Impala Sales,* 283 Md. 296, 324, 389 A.2d 887 (1978), which quoted *Herring v. Offutt,* 266 Md. 593, 597, 295 A.2d 876 (1972)).  In that context, § 7–101(a) instructs the personal representative to "settle and distribute the estate of the decedent . . ., fairly considering the interests of all interested persons and creditors."  MD.CODE ANN., EST. & TRUSTS § 7–101 (1991).

In the case at bar, defendants apparently made relatively regular payments on the loans for three years following the Cormiers' death.[31]  Defendants did not inform plaintiffs of the six-month limitations period.[32]  In Mr. Reed's February 16 letters to the plaintiffs, he asked plaintiffs to "confirm the unpaid balance" of their loans.  In a telephone conversation approximately one week after the letters, Mr. Reed reiterated to Mr. Price, then-attorney for the Chamberlins, the Estates' desire to maintain the payments and keep the property.[33]  Furthermore, a series of communications, both written and oral, which transpired after the end of the limitations period seem to reveal the Estates' apparent intent to pay off the loans in full.[34]  Though an express assurance by defendants that no claim need be filed, present in a case such as *Lampton,* is lacking in this case, the conduct of the Estates does seem to satisfy the first prong of the estoppel test.

In order to establish an estoppel, plaintiffs must show good-faith reliance.  *See Lampton,* 94 Md.App. at 476 n. 7, 617 A.2d 1142 ("Presumably, reliance that was unjustified or unreasonable would not be in 'good faith.' ").  Defendants make much of the alleged sophistication of the claimants, maintaining that they could not have been duped by defendants into not filing claims.[35]  But

---

30.  Given the fact that the court in *Lampton* apparently relied solely upon an oral telephone conversation in determining that there was an appropriate grounding for an estoppel, defendants' contention that *Lampton* precludes the use of oral evidence to support an estoppel would appear questionable, though the fact that a certain type of oral evidence can support an estoppel does not mean necessarily that any type of oral evidence will suffice.  *See* Appellees' Response to RTC's Opp'n to Mot. for S.J. at 5.

31.  *See* Chamberlins' Mem. in Supp. of Mot. for S.J. at 5–6;  Mem. of RTC in Supp. of Mot. for S.J. at 4.

32.  That fact is interesting to note in the light of Justice O'Connor's following comment in *Pope,* 485 U.S. at 489, 108 S.Ct. at 1347, 99 L.Ed.2d at 578:

Moreover, the executor or executrix will often be, as is the case here, a party with a beneficial interest in the estate.  This could diminish an executor's or executrix's inclination to call attention to the potential expiration of a creditor's claim.  There is thus a substantial practical need for actual notice in this setting.

33.  The substance and import of that conversation was admitted into evidence without objection during an on-the-record telephone conference participated in by this Court and counsel for all of the parties on Oct. 4, 1993.

34.  *See, e.g.,* RTC's Opp'n to Appellees' Mot. for S.J. at 4–6;  Chamberlins' Mem. in Supp. of Mot. for S.J. at 5–6.

While communications occurring after the end of the six-month period for filing claims do not constitute direct evidence of voluntary conduct for estoppel, they would appear to reflect upon the parties' perceptions and intent during the relevant period.  *See* Federal Rule of Evidence 404(b) and its application to subsequent as well as prior acts.  *Cf. United States v. Hadaway,* 681 F.2d 214, 217 (4th Cir.1982) (Murnaghan, J.) ("That one has thought in a particular illegal way over a period of time is evidence that one's thought patterns had already been so developed and were operating on another previous occasion); 2 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence* ¶ 404[08] at 404–49, 50 ("It does not matter whether the profferred [sic] act occurred prior or subsequent to the charged crime so long as relevancy to the consequential act is shown").

35.  *E.g.,* Mem. in Supp. of Appellees' Mot. for S.J. at 19.  Defendants cite the case of *Cornett v. Sandbower,* 235 Md. 339, 201 A.2d 678 (1963), in which the failure of a creditor to file a claim within the limitations period was held due to a lack of diligence.  In that case, the estate was held not estopped from asserting its limitations defense.  *See Cornett,* 235 Md. at 342–343, 201 A.2d 678.  In *Cornett,* the estate made no express

that approach would not appear fairly applicable in this case. Herein, the payments made by the Estates, and their representations from the beginning that they would make those payments, seem to have reasonably lulled plaintiffs into believing the loans would be paid. The tenor of the communications between the parties, both during and after the limitations period, buttresses that conclusion.

Finally, defendants' assertions that no detriment stemmed from plaintiffs' reliance, as they continue to possess rights to the underlying security interest,[36] are without merit. Were this Court to find no timely filing of claims and allow a limitations defense by defendants, plaintiffs would be left with no recourse to recover any deficiency resulting after a foreclosure of the underlying property. Seemingly, it is for that reason that plaintiffs filed this suit in the first place.

### CONCLUSION

Accordingly, this Court holds that plaintiffs filed timely, valid claims under § 8–103, and, in the alternative, that even if plaintiffs did not so do, defendants are estopped from asserting a limitations defense as a result of their conduct and representations to plaintiffs. Therefore, this Court concludes that plaintiffs' claims have been timely and validly filed and will today enter an appropriate Judgment Order in favor of plaintiffs.

representations to the creditor, and its only correspondence consisted of a request that the creditor undergo a physical examination to substantiate claims of injury at the hands of the decedent. *See id.*

36. *See* Mem. in Supp. of Appellees' Mot. for S.J. at 19.