47 F.3d 1164
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John CHAMBERLIN; Gloria Chamberlin; Resolution Trust
Corporation, As Receiver for Second National
Federal Savings Association, Plaintiffs-Appellees,
v.
Linda CARTER, Personal Representative of the Estate of
Dorothy Cormier; Isabelle CORMIER, Personal
Representative of the Estate of George
Cormier, Defendants-Appellants.
 No. 94-1236.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 2, 1994.
Decided Feb. 16, 1995.
 
 ARGUED: Una Maria Perez, Harley Thomas Howell, HOWELL, GATELY, WHITNEY & CARTER, Towson, MD, for Appellants. Laurin Howard Mills, NIXON, HARGRAVE, DEVANS & DOYLE, Washington, DC, for Appellees. ON BRIEF: John S. Bainbridge, Jr., HOWELL, GATELY, WHITNEY & CARTER, Towson, MD, for Appellants. Robert C. Bernius, NIXON, HARGRAVE, DEVANS & DOYLE, Washington, DC, for Appellee RTC; Richard R. Page Wyrough, CAIN & WYROUGH, Upper Marlboro, MD, for Appellees Chamberlin.
 Before ERVIN, Chief Judge, MICHAEL, Circuit Judge, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 The personal representatives of the estates of George and Dorothy Cormier appeal from a judgment which upheld as valid certain claims of John and Gloria Chamberlin and the Resolution Trust Corporation (the "RTC") against the estates.
 
 I.
 
 2
 The parties do not dispute any of the relevant or material facts, which are as follows. In November 1988, George and Dorothy Cormier borrowed money to buy real estate in Maryland: $ 215,000 from the Second National Federal Savings Association (now succeeded by the RTC), secured by a first deed of trust, and $ 70,000 from John and Gloria Chamberlin, secured by a second purchase money mortgage. A few months later, on January 22, 1989, both of the Cormiers died in a car accident.
 
 
 3
 Their daughter, Deborah Cormier, retained attorney William Reed to provide legal services in the administration of their estates. Deborah was appointed personal representative of both estates: on February 27, 1989, for George's and on March 8, 1989, for Dorothy's. Deborah later resigned and was replaced by George's mother, Isabelle Cormier, as personal representative of George's estate, and by attorney Linda Carter as personal representative of Dorothy's estate.
 
 
 4
 Early in the administration of the estates, attorney Reed informed the bank and the Chamberlins by letters dated February 16, 1989, that the Cormiers had died. In these letters, he asked the bank and the Chamberlins to confirm the amounts of the unpaid balances of the loans and to provide other relevant information. He also assured the Chamberlins that "the loan will be repaid" and that the family intended "to maintain your loan in good standing." JA at 173-74.
 
 
 5
 The bank responded by letter dated February 27, 1989, providing information including the duration and terms of the loan, the current principal balance, the date and amount due each month, and, referring to a telephone conversation with Reed, its understanding that Deborah would be taking over the loan payments. JA at 200. The Chamberlins did not respond immediately. Later, their attorney wrote Reed a letter dated June 5, 1989, giving notice that the loan was then in default. JA at 199. It also stated that, if the overdue payments were not paid, the "entire principal amount outstanding and accrued interest thereon shall become due and payable at the option of my clients." Id. Although they eventually defaulted, the estates made regular payments to both secured creditors after receiving these letters, at least until November 1991 to the bank and until December 1991 to the Chamberlins.
 
 
 6
 In addition to participating in the correspondence described above, the secured creditors both ultimately filed formal claims against the estates with the county register of wills. The Chamberlins did so on April 16, 1990, and again on December 17, 1990. JA at 175-80. In response to the Chamberlins' filings, Alan Schlaifer, attorney for Isabelle Cormier, wrote a letter on January 25, 1991, to the Orphans' Court of Prince George's County, stating that he acknowledged the Chamberlin's "basic claim" and that he "would check the status of payments and would contact Deborah Cormier and her counsel ... to have payments made on a current basis." JA at 243-47. He also explained that he would attempt to arrange a sale of the property, with proceeds to go to the Chamberlins and the bank, and that he believed that the Chamberlins would be creditors, albeit unsecured, with regard to any deficiency.
 
 
 7
 Although the bank had not yet filed formal claims against the estates, Isabelle and Deborah Cormier, purporting to act as personal representatives of the estates, wrote to the bank on October 18, 1991, indicating their intent to pay off the bank loan or to refinance it with another institution. The bank only filed formal claims on May 14, 1992, after receiving a Notice of Intent to Disallow the claims from the estates. JA at 198.
 
 
 8
 At the time in issue, Maryland Code Ann., Est. & Trusts Sec. 8-103(a) provided that
 
 
 9
 all claims against an estate of a decedent, whether due or to become due, ... are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within six months after the first appointment of a personal representative.[1]
 
 
 10
 In this case, this six month period ran from the time of Deborah's initial appointments as personal representative of the two estates. Thus, the period within which claims had to be presented against the two estates ended on August 27, 1989, and September 8, 1989, respectively.
 
 
 11
 Maryland Code Ann., Est. & Trusts Sec. 8-104 provides alternative methods to present claims. The two methods relevant to this appeal are:
 
 
 12
 (b) Delivery to the personal representative .--The claimant may deliver or mail to the personal representative a verified written statement of the claim indicating its basis, the name and address of the claimant, and the amount claimed. If the claim is not yet due, the date when it will become due shall be stated.... If the claim is secured, the security shall be described....
 
 
 13
 (c) Filing with register.--The claimant may file a verified written statement of the claim ... with the register.... Both creditors' formal filings with the register of wills under subsection (c) were indisputably untimely. The only possible question was whether the creditors may sufficiently have complied with the requirements of subsection (b) within the claim period.
 
 
 14
 Following receipt from the estates of formal Notices of Intent to Disallow their claims, the bank and the Chamberlins petitioned the Orphans' Court for allowance of their claims. On June 30, 1992, the Orphans' Court denied their claims, holding that they had not been timely or appropriately filed under the provisions of Secs. 8-103(a) and 8-104. Both the bank and the Chamberlins appealed to the Circuit Court of Prince George's County, which consolidated the cases for trial.
 
 
 15
 When the RTC became conservator of the bank, it removed the consolidated case to federal district court, pursuant to 12 U.S.C. Sec. 1441a(l )(3) (Supp.1993). The district court upheld the validity of the claims, on alternative grounds. First, the court held that the RTC and the Chamberlins "substantially complied with the requirements of the applicable Maryland statutes" by timely filing informal claims in a manner "sufficiently clear and certain as fairly to apprise the personal representative of what the claimant[s][are] seeking." Chamberlin v. Carter, 835 F.Supp. 869, 874-75 (D. Md.1993) (quoting Campbell v. Welsh, 460 A.2d 76, 86 (Md. Ct. Spec.App.1983)) (alterations in original). Specifically, the district court held that the letters of the claimants dated February 27, 1989, and June 5, 1989, which were received well within the limitations period, constituted the type of substantial compliance with Sec. 8-104(b) which, under Lampton v. LaHood, 617 A.2d 1142 (Md.App.1993), and Lowery v. Hairston, 533 A.2d 922 (Md.App.1987), may suffice as timely filing under Maryland law. Chamberlin, 835 F.Supp. at 874.
 
 
 16
 In the alternative, the district court held that, even if the letters did not comply with the statutory requirements, the personal representatives were estopped by their conduct during the course of correspondence between the parties from asserting the untimeliness of the eventual filing of the claims with the register of wills. Id. at 880-82. Finally, the court held that, under Maryland law, the creditors were not required to elect a remedy (choosing either to rely on their secur ity interest for protection or to file a claim as an unsecured creditor of the estate) within the statutory period. Id. at 877-79.
 
 
 17
 This appeal followed.
 
 II.
 
 18
 Having carefully considered the parties' briefs, the oral arguments of counsel, and the record, we affirm the judgment of the district court.[2] We do so only on the basis of its holding that the creditors' letters to the estates constituted substantial compliance with the requirements of Maryland Code Ann., Est. & Trusts Sec. 8-104(b), hence timely filing of their claims under Sec. 8-103(a), and its further holding that the creditors were not required to elect between reliance on their secured interests and their claims as unsecured creditors. As to those two holdings, we adopt the reasoning of the district court. Because these suffice for affirmance of its judgment, we do not address the alternative ground for its decision that the estates were estopped by their conduct from denying the validity of the claims.
 
 AFFIRMED
 
 
 [1]
 It has since been amended to provide different filing periods
 
 
 [2]
 There is some minor confusion as to the exact procedural setting for the court's decision. The matter was addressed on the parties' cross-motions for summary judgment. When it appeared that there were indeed no disputed issues of material fact, the court proceeded to decide the case as on a stipulated factual record, stating that the cross-motions were "moot." Its resulting decision was, in any event, rendered as a matter of law on agreed facts and we review it, accordingly, de novo